UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| 1ST SOURCE BANK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:18-CV-089 JD |
| | ) |
| MINNIE MOORE RESOURCES, INC. | ) |
| and CARL JOHNSTON, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Minnie Moore Resources, Inc. took out a loan from 1st Source Bank to finance its purchase of mining equipment. The loan was secured by the equipment being purchased, and was guaranteed by Minnie Moore's president. After the loan went into default, 1st Source Bank sued Minnie Moore and its president, seeking a money judgment in the outstanding amount and seeking to foreclose on the collateral. It now seeks summary judgment on those claims. The defendants do not deny that they are liable for the outstanding loans, but contest 1st Source Bank's ability to foreclose on the collateral, arguing that the equipment they actually received from the seller was defective and different from what they ordered. Those arguments do not affect 1st Source Bank's rights in the collateral, though, so the Court grants the motion for summary judgment.

### I. FACTUAL BACKGROUND

Minnie Moore Resources, Inc. operates a mining venture in Idaho. Its president is Carl Johnston. In order to scale up Minnie Moore's operations, Mr. Johnston began looking in August 2017 to purchase three pieces of heavy equipment: (1) a "Grizzly" (a materials separator), (2) an Extec rock crushing plant; and (3) an Extec screening plant (a different type of materials

separator). Mr. Johnston found an online advertisement by Interval Equipment Solutions, Inc. for those pieces of equipment. After discussions with Interval Equipment Solutions, Mr. Johnston agreed to purchase those three pieces of equipment for a combined price of $350,000. Mr. Johnston then contacted 1st Source Bank to obtain financing for that purchase.

On September 21, 2017, Minnie Moore (by Mr. Johnston) executed a Promissory Note and a Loan and Security Agreement with 1st Source Bank. In the Promissory Note, Minnie Moore agreed to repay the $350,000 purchase price (plus $800 in fees) over a term of four years. The Note identified the three pieces of equipment and their purchase prices, and directed 1st Source Bank to disburse the loaned funds directly to Interval Equipment Solutions. [DE 33-2]. The Loan and Security Agreement also pledged collateral to secure that loan. It identified the collateral as follows:

> Grizzly Screen s/n RT-17-0801
>
> Extec C12+ Track Mounted Jaw Crushing Plant s/n 11899
>
> Extec S-5 Track Mounted Screening Plant s/n 9520

[DE 33-1 p. 7]. The agreement stated that the collateral also included any accessories and manuals and other materials related to those pieces of equipment. The agreement further stated that if Minnie Moore defaulted on its payment obligation, 1st Source Bank could require the remaining balance to be paid immediately, together with any unpaid interest. 1st Source Bank later filed UCC Financing Statements to perfect its security interest in the collateral. In addition to those documents that Mr. Johnston executed on behalf of Minnie Moore, Mr. Johnston executed a Guaranty of Payment on his own behalf. In that agreement, Mr. Johnston "unconditionally guarantee[d]" full payment of all of Minnie Moore's obligations to 1st Source Bank. [DE 33-3].

After completing the purchase, Minnie Moore received the three pieces of equipment from Interval Equipment Solutions. The Grizzly worked properly, but Minnie Moore believed that the rock crusher and the screening plant were defective. Upon further investigation, Minnie Moore came to believe that the equipment that Interval Equipment Solutions delivered to it were not the same pieces of equipment it had ordered. Though the invoice represented that the rock crusher was a 2009 model, the equipment that was delivered was actually a 2008 model. And though the invoice represented the screening plant to be a 2008 model, it was actually a 2006 model. The rock crusher was also missing an identification plate. After Minnie Moore pointed that out, Interval Equipment Solutions sent a replacement plate, but it did not match the serial number on the invoice: the invoice identified the serial number as "11899," while the replacement plate said "11889." The screening plant did not have an identification plate, either, but its serial number was stamped onto the frame of the equipment.

Believing the equipment to be defective, Minnie Moore stopped making payments to 1st Source Bank. In December 2017, 1st Source Bank declared Minnie Moore to be in default and demanded immediate payment of the entire loan balance. Minnie Moore failed to make any payments, so 1st Source Bank filed this action against Minnie Moore and Mr. Johnston. 1st Source Bank first seeks money judgments against Minnie Moore and Mr. Johnston on the loan and the guaranty, respectively. 1st Source Bank also seeks to foreclose on the collateral. 1st Source Bank has moved for summary judgment, and that motion has been fully briefed. As of February 14, 2019, the outstanding balance on the loan was $406,273.36, and interest continued to accrue at $45.82 per day.

## II.  STANDARD OF REVIEW

A court must grant summary judgment if the movant shows that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). However, the non-moving party cannot simply rest on the allegations contained in its pleadings but must present evidence sufficient to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000).

### III. DISCUSSION

1st Source Bank moves for summary judgment in its favor on all counts of its complaint, asking for money judgments against Minnie Moore and Mr. Johnston and for the right to take possession of and foreclose on the collateral. In response, the defendants object on narrow grounds only applicable to 1st Source Bank's rights in the collateral. Neither defendant offers any argument in response to 1st Source Bank's claims for money judgments—they do not dispute that they entered the agreements, that they defaulted under those agreements, or that they are now obligated to pay those outstanding amounts. The Court therefore grants the motion for summary judgment as to Counts 1 and 2, and holds that the defendants are jointly and severally

4

liable for the amount of $406,273.36, plus $45.82 of interest for each day after February 14, 2019 until the date of entry of final judgment.

Rather, the defendants argue only that 1st Source Bank lacks an enforceable interest in the collateral because the equipment that Minnie Moore received was defective and differed from what the seller represented. They first argue that the security agreement fails to identify the collateral because it does not specify the model years of the equipment. Second, they argue that there is a dispute over whether the equipment at issue is the same equipment identified in the security agreement, in light of the possible discrepancies as to the serial numbers.

At the outset, those arguments pertain only to the rock crusher and the screening plant; the defendants do not dispute that the security agreement is enforceable at least as to the Grizzly. In addition, the defendants' arguments are misplaced even as to the rock crusher and screening plant. In short, the defendants' complaint that the equipment is defective and nonconforming is a dispute for them to take up with Interval Equipment Solutions, which sold the equipment. It does not affect 1st Source Bank's rights in the collateral, so 1st Source Bank is entitled to exercise its rights in that collateral.

The Uniform Commercial Code governs the enforcement of security interests. A security interest will attach and be enforceable when three elements are present: (1) value has been given; (2) the debtor has rights in the collateral; and (3) the debtor has authenticated a security agreement that provides a description of the collateral. Ind. Code § 26-1-9.1-24(b). There is no dispute here as to the first two elements. As to the third element, the code clarifies what suffices as a description of the collateral: "a description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described." *Id.* § 26-1-9.1-108(a). That can be done by providing a "specific listing" or a "category," or by "any other method, if the identity

5

of the collateral is objectively determinable." *Id.* § 26-1-9.1-108(b). This does not require exacting precision, nor does an error in the description necessarily invalidate a security interest. *Fifth Third Bank v. Comark, Inc.*, 794 N.E.2d 433, 439 (Ind. Ct. App. 2003). "The purpose of the description of the security interest is to minimize 'the possibility of future dispute as to the terms of a security agreement and as to what property stands as collateral for the obligation secured.'" *Id.* (quoting *Citizens Nat'l Bank of Evansville v. Wedel*, 489 N.E.2d 1203, 1205 (Ind. Ct. App. 1986)). A description suffices if it allows that purpose to be fulfilled. *Id.*; Ind. Code. § 26-1-9.1-108(a).[1]

The defendants first argue that the security agreement is unenforceable as to the rock crusher and the screening plant because the agreement does not identify their model years. The defendants argue that the model years are important because older models are likely worth less than newer ones, and because the equipment they actually received was older than what they purchased. That argument fails, though, because that has nothing to do with whether the security agreement reasonably identifies the collateral. The agreement identifies these pieces of equipment as an "Extec C12+ Track Mounted Jaw Crushing Plant s/n 11899" and an "Extec S-5 Track Mounted Screening Plant s/n 9520." That description identifies the specific pieces of equipment and even provides their serial numbers. The promissory note executed with the

---

[1] 1st Source Bank also filed UCC-1 Financing Statements to perfect its security interest. Perfecting a security interest is only necessary to make the security interest effective against third parties; a security interest is enforceable "as between the secured party and the debtor" upon meeting the three requirements for attachment. *Wedel*, 489 N.E.2d at 1205. Since 1st Source Bank and Minnie Moore are the secured party and the debtor, 1st Source Bank would be entitled to enforce its interest against Minnie Moore regardless of whether the security interest was perfected. For many of the same reasons discussed below, though, the UCC-1 statements adequately identified the collateral, giving creditors sufficient notice to inquire as to the nature and extent of the security interests in the collateral. *See Comark*, 794 N.E.2d at 440. 1st Source Bank thus perfected its security interest in the collateral.

security agreement also makes clear that the collateral is the three pieces of equipment being acquired from Interval Equipment Solutions, as it identifies those same pieces of equipment along with their purchase price, and it instructs the loan proceeds to be paid directly to Interval Equipment Solutions. Those descriptions more than suffice to identify which pieces of equipment serve as collateral for this security agreement. The defendants cite no authority and give no reason for why the model year must also be included in order to reasonably identify the collateral. Their complaint that the collateral is worth less because it is older than they thought is for them to take up with the seller, not their lender.

  The defendants next argue that there is a question as to whether the equipment identified in the security agreement is the same equipment they received because the serial numbers may have been incorrect. They note that the security agreement states that the rock crusher's serial number is "11899," but that the rock crusher that was delivered was missing an identification plate and the replacement they received read "11889."[2] Even assuming the defendants could prove that the rock crusher's serial number was incorrect—Mr. Johnston represents that their expert concluded that the rock crusher's serial number is actually "11899," just as identified in the security agreement—that discrepancy would not render the security agreement unenforceable. The security agreement describes the rock crusher as an "Extec C12+ Track Mounted Jaw Crushing Plant." The defendants do not claim that they have any other Extec C12+ Track Mounted Jaw Crushing Plant, and that they are unsure which one the security agreement is referring to. The context of the agreement also makes plain that the collateral is the three pieces

---

[2] The defendants also note that the screening plant lacked an identification plate, but they further note that the serial number reflected in the security agreement was stamped on its frame. [DE 35-1 ¶ 24]. Thus, they haven't shown that there is any discrepancy as to the screening plant. But even if there was, it would be immaterial for the same reason discussed as to the rock crusher.

of equipment being acquired from Interval Equipment Solutions, the purchase for which Minnie Moore was taking out the loan to finance. As noted above, the promissory note identifies each piece of equipment by its name, serial number, and purchase price, and directs 1st Source Bank to disburse the loan proceeds directly to Interval Equipment Solutions. In that context, an incorrect serial number would not create a genuine question as to what equipment the parties intended to serve as collateral.

The Indiana Court of Appeals addressed a similar issue in *Comark*, 794 N.E.2d 433. There, the security agreement identified the collateral as "inventory" consisting of computer products made by Comark. *Id.* at 439. That description was incorrect, as the items were not inventory but equipment. *Id.* The court held that the inaccuracy did not render the security interest unenforceable, though. It noted that in "'interpreting a written contract the court will attempt to determine the intent of the parties at the time the contract was made as disclosed by the language used to express their rights and duties.'" *Id.* (quoting *First Fed. Sav. Bank of Ind. v. Key Mkts., Inc.*, 559 N.E.2d 600, 603 (Ind. 1990)). Despite the inaccuracy in the description, the court held that "the remainder of the language describing the collateral clearly indicates that the parties intended to use the computer products bearing the name or distributed by Comark . . . as collateral." *Id.* at 439–40.

The same is true here. The security agreement gives a precise description of each of the three pieces of equipment—the "Grizzly Screen," the "Extec C12+ Track Mounted Jaw Crushing Plant," and the "Extec S-5 Track Mounted Screening Plant." The defendants do not suggest that those descriptions could be referring to any other pieces of equipment. And to the extent there is any question, the context of the agreement makes clear that the Extec C12+ Track Mounted Jaw Crushing Plant in question is the one that Minnie Moore purchased from Interval Equipment

8

Solutions with the loan it took out to purchase that equipment. Even if the security agreement transposed a digit in the serial number, the remainder of the language describing the collateral shows that the parties intended for that equipment to serve as collateral, just as in *Comark*. Again, the defendants' argument that Interval Equipment Solutions delivered defective or non-conforming equipment is a separate issue that does not impair 1st Source Bank's rights in the collateral.

There is no genuine dispute as to any fact material to the enforceability of the security agreement. The Court therefore grants the motion for summary judgment as to Counts 3 and 4 and holds that 1st Source Bank is entitled to take possession of and foreclose on the collateral.

## IV.  CONCLUSION

The Court GRANTS the motion for summary judgment. [DE 32]. 1st Source Bank is entitled to judgment in its favor on all four counts of its complaint. 1st Source Bank is ORDERED to submit a proposed judgment accordingly.

SO ORDERED.

ENTERED:  May 17, 2019

/s/ JON E. DEGUILIO
Judge
United States District Court
